Gregory R. LARIMORE *v.* STATE of Arkansas

CR 96-219                                        938 S.W.2d 818

Supreme Court of Arkansas
Opinion delivered February 10, 1997

*Daniel G. Ritchey*, *Kent J. Rubens*, and *Bill W. Bristow*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Olan W. Reeves*, Sr. Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Petitioner Gregory R. Larimore was convicted in 1990 of first-degree murder in the death of his wife, June Larimore. We reversed that conviction, and he was again convicted in 1993 upon retrial. We affirmed the second conviction, and the mandate was issued on June 29, 1994. On May 3, 1995, Larimore filed a petition for postconviction relief under Ark. R. Crim. P. 37. His Rule 37 petition was based on allegations of prosecutorial misconduct in failing to disclose exculpatory evidence to the defense. Following the State's motion to dismiss, he amended his petition and asserted that relief should alternatively be provided through a writ of error coram nobis. Based on stipulations entered into solely for the purpose of the motion to dismiss, the trial court dismissed the petition, stating it lacked jurisdiction because the petition was untimely filed. Larimore appeals the order of dismissal. We affirm in part, reverse in part, and grant leave to the Crittenden County Circuit Court for consideration of a writ of error coram nobis.

As this is the third time this case has come before us, a review of the facts is appropriate.

### Matters from Earlier Proceedings

Shortly before noon on January 11, 1990, the body of June Larimore was found on the bedroom floor of her Blytheville home. She had been stabbed 134 times with a knife that had been cleaned and replaced in a cutlery block in the kitchen. Her husband, petitioner Larimore, arrived at work before 7:00 a.m. According to him, his wife was alive and sleeping in bed when he left their home that morning between 6:30 and 6:45 a.m.

At the first trial, Larimore was convicted of the first degree murder of his wife and sentenced to life imprisonment. The State's case was structured on the theory that she was murdered between 2:00 and 4:00 a.m., and could not have been alive when

Larimore left for work. In *Larimore v. State (Larimore I)*, 309 Ark. 414, 833 S.W.2d 358 (1992), this court reversed and remanded because the jury was impermissibly allowed to take excluded evidence into the jury room for deliberation.

Upon retrial, Larimore was again convicted and sentenced to twenty-five years' imprisonment. This court affirmed the second conviction. *Larimore v. State (Larimore II)*, 317 Ark. 111, 877 S.W.2d 570 (1994). Because all of the evidence was circumstantial, time of death was a crucial issue. Mrs. Larimore's body was found at the couple's home by her sister around 11:30 a.m. on January 11, 1990. It was undisputed that Larimore reported to work before 7:00 a.m., that there was no blood on him, and that his appearance was normal. *Id.* at 116, 877 S.W.2d at 572. Clearly, if his wife's death occurred after 6:45 a.m., he could not have killed her. It was undisputed that he was home with her all night, and that no one else was there. If her death occurred before 6:45 a.m., a jury could conclude beyond a reasonable doubt that he was guilty.

Before the second trial commenced, the defense was provided the original report form prepared by an employee of the medical examiner's office on the day of the murder. It appeared that there had been a time of death of "7:00 a.m." entered on the report, but this notation had been whited out and the words "time unknown" written over the white-out. Larimore cross-examined the state medical examiner, Dr. Fahmy Malak, about this document, and he testified that he had no knowledge about any alteration to the document. Dr. Malak testified that the time of death was between 1:00 a.m. and 2:00 a.m. . Medical experts for Larimore testified that the time of death was between 7:00 a.m. and 8:00 a.m.

In affirming Larimore's second conviction, we wrote:

> Appellant also argues that the original medical examiner's report was altered. The name of the victim on the original document was covered with "white out" and the name "Demetria" was changed to "Laura." The victim's full name was Demetria June Larimore. It also appears that there was once a time of death entered on the report, but someone wrote "time unknown" over

white-out. These were factors to be considered by the jury in determining the credibility of Dr. Malak and his reports. Credibility is for a jury, not an appellate court, to determine.

*Larimore II*, 317 Ark. at 118, 877 S.W.2d at 573.

## The New Evidence and Proceedings

On December 29, 1994, Ralph Hill, Chief of Police of the Blytheville Police Department, was being deposed as a witness in a civil wrongful-death case brought by Mrs. Larimore's family. Chief Hill testified that Dr. Malak had expressed to him that one of his tentative opinions about the time of death was that it occurred between 6:00 and 7:00 a.m. on January 11, 1990.

On May 3, 1995, Larimore filed his petition for Rule 37 relief. This petition did not refer to a writ of error coram nobis, but asked the trial court to either declare the judgment void, or set aside the conviction and order a new trial. On May 22, the State filed a motion to dismiss, asserting that the petition was untimely, and that the trial court lacked jurisdiction to grant the relief requested. Larimore filed a response to the motion to dismiss, contending that if the trial court lacked jurisdiction to set aside a conviction under Rule 37, such an interpretation of the Rule would deny him due process, and that a writ of error coram nobis should issue.

For the purpose of the hearing on the State's motion to dismiss, the parties entered in to a "Stipulation of Undisputed Facts" which conceded that the State had knowledge of exculpatory evidence that it withheld from the defense. The trial court found that the stipulation established a violation of due process. Notwithstanding this finding, the motion to dismiss was granted because the petition was not timely filed. From that order comes this appeal.

## The Issues

Larimore lists seven assignments of error, but actually presents two issues: (1) whether the trial court erred in dismissing this claim as a Rule 37 petition for postconviction relief; and (2)

whether the trial court erred in determining that a writ of error coram nobis is subject to the same time limits as a Rule 37 petition. We first consider the issues relating to Rule 37.

Rule 37 of the Arkansas Rules of Criminal Procedure provides the avenue for postconviction relief under circumstances set out in the Rule. Subsection (c) provides that petitions entered after the affirmance of an appeal must be filed within sixty days after the mandate was issued by the appellate court. *Hamilton v. State*, 323 Ark. 614, 615, 918 S.W.2d 113, 113 (1996) (examining Ark. R. Crim. P. 37.2(c)). In *Robinson v. State*, 295 Ark. 693, 751 S.W.2d 335 (1988), this court stated:

> There is no constitutional right to a postconviction proceeding; but when a state undertakes to provide collateral relief, due process requires that the proceeding be fundamentally fair.

*Id.* at 699, 751 S.W.2d at 339 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). The court then found that Rule 37's requirement that the issue could not have been raised in the trial court or upon appeal was a "fundamentally fair" requirement that passed constitutional muster. *Id.*

Larimore argues at length that this sixty-day filing requirement is an unconstitutional deprivation of due process; however, he provides no citation of authority that would indicate that the sixty-day deadline is fundamentally unfair. We affirm the trial court's dismissal of the petition for relief under Rule 37 as untimely.

We next consider whether a writ of error coram nobis is subject to the same time limits as a Rule 37 petition. In *Williams v. State*, 289 Ark. 385, 711 S.W.2d 479 (1986), this court expressly held that "[e]rror coram nobis proceedings are not interchangeable with proceedings under Rule 37." *Id.* at 387, 711 S.W.2d at 481. In other words, a Rule 37 proceeding is for a mistake at trial while a writ of error coram nobis is appropriate when an issue was not addressed or could not have been addressed at trial because it was somehow hidden or unknown.

Both Larimore and the State confused the postconviction relief provided by Rule 37 with the completely distinct matters for

which a party may obtain relief by a writ of error coram nobis. Larimore's revised petition was labelled as "a writ of error coram nobis, Rule 37, and a writ of habeas corpus." The trial court mistakenly adopted with approval the State's assertion: "Call the Petition what you like, a writ of error coram nobis, a writ of habeas corpus, or simply a petition, it still must comply with the limitation of Rule 37 and be filed within 60 days."

██ The time requirement for seeking a writ of error coram nobis is not limited to sixty days, but due diligence is required in making application for relief. *Troglin v. State,* 257 Ark. 644, 646, 519 S.W.2d 740, 741 (1975). *See also* John H. Haley, Comment, *Coram Nobis and The Convicted Innocent,* 9 Ark. L. Rev. 118 (1954–55). The Haley article, which we cited with approval in *Penn v. State,* 282 Ark. 571, 576, 670 S.W.2d 426, 429 (1984), noted that due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) he could not have, in the exercise of due diligence, presented the fact at trial; or (3) upon discovering the fact, did not delay bringing the petition. Haley, *supra,* at 125.

The trial court's error in applying a sixty-day time limit does not settle the question of whether a writ of error coram nobis is appropriate in this case. Where, as here, the record addressed by the writ is lodged in this court, we make the initial determination to grant, or not to grant, leave for consideration of the petition for a writ by the trial court. In this case, the trial court barred consideration of the writ as untimely, and Larimore appealed. We treat this appeal as a request by Larimore for leave to present his petition for a writ of error coram nobis to the trial court. If we grant leave, the trial court must then determine the merits of the petition.

██ This follows the rule first stated in *State v. Hudspeth,* 191 Ark. 963, 88 S.W.2d 858 (1935). An issue in that case was whether a writ of error coram nobis is available after appeal. *Id.* at 970, 88 S.W.2d at 861. We noted that by having previously heard and decided such cases, we had tacitly held that the writ would lie, and enunciated the following rule:

> We think, however, that the better rule is that, when a judgment has been affirmed by this court, no application for the writ of

error *coram nobis* may be made to the trial court without permission to make such application has been given by this court, and hereafter this rule will be enforced.

*Id.* at 971, 88 S.W.2d at 861. This requirement was restated in *Mitchell v. State*, 234 Ark. 762, 763, 354 S.W.2d 557, 558 (1962), where we pointed out that after a case is appealed to this court we acquire jurisdiction. A circuit court can entertain a writ of error coram nobis after appeal only if we grant permission. *Id.* Similarly in *Penn v. State*, 282 Ark. at 573, 670 S.W.2d at 428, the petitioner was granted leave by this court to file the petition for consideration of a writ of error coram nobis by the trial court. We stated:

Penn is granted permission to file this petition with the trial court seeking a writ of error coram nobis, and the trial court is reinvested with jurisdiction to hear the petition, conduct a hearing and decide whether the writ is in order. If the court grants the writ, the remedy is a new trial; if it denies the writ, the remedy is a writ of certiorari.

*Id.*, 670 S.W.2d at 428.

### Should Leave for Consideration of a Writ of Error Coram Nobis be Granted?

The writ of error coram nobis is an extraordinary remedy which should be allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature, and a presumption of regularity attaches to the criminal conviction being challenged. *United States v. Morgan*, 346 U.S. 502, 512 (1954).

In the present case, we consider the applicability of the writ of error coram nobis to address errors of the most fundamental nature. In *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996), we held that the writ was unavailable to explore allegedly misleading responses by a juror during voir dire, and stated:

Error coram nobis is a rare remedy. It is available only where there is an error of fact extrinsic to the record, such as insanity at the time of trial, a coerced guilty plea or material evidence withheld by the prosecutor, that might have resulted in a different

verdict. *Taylor v. State*, 303 Ark. 586, 799 S.W.2d 519 (1990). The writ has also been used in cases in which a third party confessed to the crime during the time between conviction and appeal. *Smith v. State*, 301 Ark. 374, 784 S.W.2d 595 (1990).

*Id.* at 109, 925 S.W.2d at 775.

For the writ of error coram nobis to issue following the affirmance of a conviction by this court, a fundamental error extrinsic to the record, such as prosecutorial misconduct in withholding material evidence, must be shown. When the question of insanity at the time of trial was not raised until after we had affirmed conviction, we allowed the trial court to issue the writ for the purpose of inquiring into the question of sanity of the accused at the time of the trial. *Hydrick v. State*, 104 Ark. 43, 45, 148 S.W. 541, 541–42 (1912) (citing *Johnson v. State*, 97 Ark. 131 (1911)).

■ When there is no showing of a fundamental error, such as set forth in *Davis*, we have made it clear that newly discovered evidence is not a basis for relief under coram nobis. *Smith v. State*, 301 Ark. at 375-76, 784 S.W.2d at 595-96. Decisions from other jurisdictions support the distinction between fundamental error and newly discovered evidence. In *Thompson v. State*, 18 So.2d 788, 789 (Fla. 1944), the Florida Supreme Court stated:

> Remedy by way of coram nobis may not be invoked solely on the ground that a material witness testified falsely at the trial concerning a material issue of the case, or withheld facts that might have been material. Neither may newly-discovered evidence going merely to the merits of the issue be used as a basis for the writ. *Lamb v. State*, 91 Fla. 396, 107 So. 535. Moreover, before a writ of error coram nobis may issue it must appear that the facts alleged as grounds for its issuance are such as would have precluded the entry of a judgment had they been available at the trial; not that such facts might have produced a different result had they been known to judge and jury. *Lamb v. State, supra*; *Hysler v. State*, 146 Fla. 593, 1 So.2d 628; *Sullivan v. State*, Fla., 18 So.2d 163.

*Id.*

As we consider whether this case presents issues of a fundamental nature compelling review of facts extrinsic to the record, we again note that the State entered into a "Stipulation of Undisputed Facts" which admitted that the State withheld and suppressed significant evidence which was exculpatory of the defendant. This stipulation formed the basis for the trial court's findings that the State withheld and suppressed exculpatory evidence from the defendant, which was material with respect to the crucial issue of time of death; that the defendant discovered the concealed exculpatory evidence after the time to file a Rule 37 petition had expired; and that the stipulation established a due process violation.

■ The effect of this stipulation is that the State concedes that its prosecutorial misconduct violated the constitutional principles of due process as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). This concession by the State leads us to grant leave for consideration of a writ of error coram nobis by the trial court.

In considering the merits of the petition, the trial court should take notice of the record before us in this proceeding and the record in the previous *Larimore* appeals. A review of the record in this appeal makes it clear that the State will not be bound by the "Stipulation of Undisputed Facts" when there is a hearing on the merits of Larimore's petition.

We also notice that the record in *Larimore II* discloses substantial questions of fact for determination by the trial court in considering whether to grant the writ. For example, the record reflects that Dr. Malak was cross-examined about his opinion as to the time of death, with attention focused on a whited out section of the medical examiner's form which appeared to have reflected a time of death of "7:00 a.m." before the white-out was applied and the words "time unknown" written on top of the white-out. It appears on the face of the form that the report was prepared by Bill Carlos based on a 2:40 p.m. telephone report from Ralph Hill on January 11, the date of the murder.

■ As the trial court considers whether to grant the writ, the following guidelines that we set forth in *Troglin v. State* are applicable:

(1) The function of the writ of coram nobis is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment;

(2) Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. The court is not required to accept at face value the allegations of the petition;

(3) Due diligence is required in making application for relief, and, in the absence of a valid excuse for delay, the petition will be denied; and,

(4) The mere naked allegation that a constitutional right has been invaded will not suffice. The application should make a full disclosure of specific facts relied upon and not merely state conclusions as to the nature of such facts.

*Troglin*, 257 Ark. at 645-46, 519 S.W.2d at 741.

The trial court is in a good position to consider and test the merits of the petition and has the discretion to grant or deny it. The factual determinations of what information was available to Larimore and what information was concealed or suppressed are essential in deciding whether the writ should be granted. If the petition is granted, there will be a new trial. If the petitioner fails in his burden of proof, or if the matters proven do not establish compelling circumstances requiring the extraordinary relief afforded by a writ of error coram nobis, then such a determination will be based upon a full hearing, consideration of the allegations, and application of principles of law to the findings of fact.

We affirm the dismissal of the Rule 37 petition, reverse the holding that the time limits of Rule 37 apply to coram nobis, and grant leave to the Crittenden County Circuit Court for consideration whether a writ of error coram nobis should be issued. The trial court is reinvested with jurisdiction to hear the petition, conduct a hearing, and decide whether the writ should be granted.

GLAZE and NEWBERN, JJ., concur in part and dissent in part.

TOM GLAZE, Justice, concurring in part and dissenting in part. The majority correctly denies Larimore's request for Rule 37 relief as untimely; however, it then mistakenly reverses the trial court and grants Larimore leave to request a writ of error coram nobis. Arkansas law clearly reflects that a convicted defendant's request for error coram nobis relief can only be granted after the trial court has lost jurisdiction and before this court has affirmed the defendant's case on appeal. *Edgemon v. State*, 292 Ark. 465, 730 S.W.2d 898 (1987) (modified on another point by *Smith v. State*, 301 Ark. 374, 784 S.W.2d 595 (1990)); *Stone v. State*, 290 Ark. 203, 718 S.W.2d 108 (1986); *State v. Scott*, 289 Ark. 234, 710 S.W.2d 212 (1986); *Williams v. State*, 285 Ark. 444, 688 S.W.2d 285 (1985); *Pickens v. State*, 284 Ark. 506, 683 S.W.2d 614 (1985); *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). In other words, petition for writ of error coram nobis is not available after this court has reviewed the case. The *Penn* court stated the reason for the limited period for filing such a petition as follows:

> We emphasize that we do not open the door to other petitions [for writ of coram nobis] beyond those that would qualify under the facts in this case, *especially the fact that it is presently between trial and appeal and can easily provide for an early hearing before the court that just heard the case.* (Emphasis added.)

In the present case, this court, after denying a petition for rehearing, affirmed Larimore's conviction on June 27, 1994, but Larimore did not file a petition for postconviction relief, including coram nobis relief, until May of 1995. *See Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994).[1] Larimore's petition for writ of coram nobis was decidedly late when requested of the trial court below, and is likewise late in his request to this court on appeal.

One last point should be made, and it is that this court has plainly held that a writ of error coram nobis cannot be granted on the basis of newly discovered evidence. *Smith v. State*, 301 Ark. 374, 784 S.W.2d 595 (1990); *Williams*, 285 Ark. 444, 688 S.W.2d

---

[1] Larimore's first conviction was reversed and remanded because the verdict was tainted by the introduction of a mass of materials into the jury room which should not have been there. *Larimore v. State*, 309 Ark. 414, 833 S.W.2d 358 (1992).

285. Here, Larimore's petition is grounded on new evidence resulting from the deposing of Officer Ralph Hill in a civil wrongful-death case brought by Mrs. Larimore's family. That new evidence, of course, asserted that Dr. Fahmy Malak had stated an earlier but tentative opinion which was consistent with Larimore's defense as to the time of Mrs. Larimore's death. Obviously, Hill's testimony was newly discovered evidence, and not the type of grounds that would warrant the granting of a writ of coram nobis under our prior holdings. This, too, is another reason why Larimore's petition should be denied.

In conclusion, I note Larimore's reliance on some earlier Arkansas cases that have held it was within the power of the trial court to grant the writ of error coram nobis after the expiration of the term in which the judgment was rendered. *Hardwick v. State*, 220 Ark. 464, 248 S.W.2d 377 (1952); *Hydrick v. State*, 104 Ark. 43, 148 S.W. 541 (1912). Those cases, however, were decided before Arkansas adopted new postconviction procedures. *See* Rule 1 of Arkansas Rules of Criminal Procedure (1965); now Rule 37 of the Arkansas Rules of Criminal Procedure.[2] Before 1965, convicted defendants were relegated to motions for new trial, in arrest of judgment, and other relief such as petitions for extraordinary writs for habeas corpus or coram nobis. *See Case v. Nebraska*, 381 U.S. 336, 338 (1964) (Clark, J., concurring).

Since Arkansas has provided an effective postconviction procedure for convicted defendants, this court has correspondingly narrowed the grounds and time needed for petitioning for writs of coram nobis. Accordingly, this court has stated that a petition for writ of error coram nobis is not available after an appellate court reviews a case. *Edgemon*, 292 Ark. 465, 730 S.W.2d 898. The *Edgemon* court, quoting *Williams*, 285 Ark. 444, 688 S.W.2d 285, also stated, "[I]f a petitioner discovers some ground for relief —

---

[2] Larimore further cites *Troglin v. State*, 257 Ark. 644, 519 S.W.2d 740 (1975), but there this court denied Troglin's petition for a writ of error coram nobis because a number of reasons, including Troglin had failed to exercise due diligence in making application for relief. Since *Troglin*, this court has repeatedly adhered to the rule that a petitioner, in applying for such extraordinary relief must do so before this court affirms petitioner's case on appeal.

after a judgment is affirmed, he may present that ground in a clemency hearing."

For the reasons stated above, I agree with the majority court's affirmance of the trial court's decision holding Larimore's Rule 37 motion should be dismissed, but disagree with its granting leave to petition for writ of error coram nobis.

NEWBERN, J., joins this opinion.