Alvin B. JACKSON *v.* STATE of Arkansas

CR 99-83                                    37 S.W.3d 595

Supreme Court of Arkansas
Opinion delivered February 8, 2001

*Jeff Rosenzweig*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, and *O. Milton Fine II*, Ass't Att'ys Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Alvin B. Jackson, was serving a life sentence without parole for one count of capital murder and two counts of attempted murder, when he stabbed a prison guard to death. A jury convicted appellant of capital murder and sentenced him to death by lethal injection. This Court affirmed in *Jackson v. State*, 330 Ark. 126, 954 S.W.2d 894 (1997). Attorney Maxie Kizer represented Jackson at trial and on direct appeal.

The mandate of affirmance issued on November 6, 1997, but was not filed in the Jefferson County Circuit Clerk's office until

November 20, 1997. Rule 37.5(b) requires that a hearing be held within twenty-one days from the issuance of the mandate. The twenty-first day fell on November 27, 1997, which was Thanksgiving Day. A hearing was held on the first business day following, which was Monday, December 1, 1997.[1]

On December 4, 1997, the circuit court issued an order *nunc pro tunc* to December 1, 1997. The court noted the above procedural facts and specifically found that "such is in conformity with the Rule [37.5]." The circuit court then appointed the Capital Conflicts and Appellate Office of the Arkansas Public Defender Commission (hereinafter the Commission) to represent appellant. The circuit court further ordered the Commission to submit within seven days the name of an attorney in its office for appointment. The circuit court ordered that upon the *specific* appointment of the *named* attorney, appellant would have ninety days in which to file his Rule 37.5 petition. The court stayed the execution.

The record does not indicate whether the Commission ever submitted a name to the circuit court. On December 22, 1997, however, the Commission, represented by its director, Ms. Didi Sallings, moved to be relieved from representation of appellant based upon a conflict of interest. On March 1, 1998, (filemarked March 6, 1998), appellant wrote to the circuit court, inquiring as to whether the court had ruled upon the Commission's motion to be relieved. On March 13, 1998, the circuit court entered an order relieving the Commission from further representation and appointing Jeff Rosenzweig to represent appellant. The court further ordered that Mr. Rosenzweig had ninety days to file a petition, pursuant to Rule 37.5.

On June 8, 1998, Mr. Rosenzweig filed a Rule 37 petition raising claims of error on the part of the trial court and five claims of ineffective assistance of counsel. On the same day, Mr. Rosenzweig filed another Rule 37 petition raising the same claims, but which included more lengthy argument under each claim, and alleging a new claim. On June 28, 1998, the State filed a motion to dismiss both of the Rule 37 petitions.

---

[1] Pursuant to Ark. R. Cr. P. 1.4, the circuit court possessed jurisdiction to hold a Rule 37.5 hearing on December 1 because November 27 and 28 were State holidays, and November 29 and 30 were Saturday and Sunday, respectively.

The State argued that appellant's Rule 37 petitions were untimely filed because they were not filed by March 4, 1998, which was ninety days after the circuit court's December 4, 1997, *nunc pro tunc* to December 1, 1997, order. As such, the State claimed that the circuit court was without jurisdiction to appoint Mr. Rosenzweig on March 13, 1998, because the ninety days for filing a Rule 37 petition had passed.

On November 19, 1998, the circuit court entered an order finding that appellant's Rule 37 petitions were not timely; and, therefore, the court was without jurisdiction to consider them. The court denied the petitions and dissolved the stay of execution. It is from that denial that the instant appeal is taken. As his only point on appeal, appellant asserts that the circuit court wrongly dismissed his Rule 37 petition as untimely and that the case should be remanded for a hearing on the merits of the petition. We agree with appellant and hereby reverse and remand the case.

The circuit court ruled, pursuant to Rule 37.5(e), that it lacked jurisdiction to consider appellant's Rule 37 petitions because they were not filed within ninety days of the court's *nunc pro tunc* order appointing the Commission to represent appellant. Rule 37.5(e) states that the ninety days will run upon entry of an order pursuant to Rule 37.5(b)(2). Rule 37.5(b)(2) *requires* the court to appoint an attorney meeting the qualifications of Rule 37.5(c), if the person under the sentence of death is indigent and desires an appointed attorney. The circuit court must enter written findings *and* the order of appointment within seven days of the Rule 37.5 hearing. See Ark. R. Cr. P. 37.5(b)(2).

The State contends that the ninety days began to run on the day the circuit court appointed the Commission, which was December 4, 1997 (*nunc pro tunc* to December 1, 1997). Thus, under this scenario, the ninety days in which to file a petition had already expired when the court appointed Mr. Rosenzweig on March 13, 1998; under this theory, it would have expired on March 4, 1998.

If the present case were a non-capital case, then the general rule would certainly be that the time limits set forth in Rule 37 are jurisdictional in nature and would apply; further, that rule would necessitate that this Court affirm the circuit court's order. *See Hill v. State*, 340 Ark. 248, 13 S.W.3d 142 (2000); *Tapp v. State*, 324 Ark.

176, 920 S.W.2d 483 (1996). However, because this is a capital case involving the death penalty and involving Rule 37.5, it calls on this Court to address whether due process requirements of fundamental fairness compel the circuit court to address appellant's Rule 37 petitions on their merits. *See Porter v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999).

■ In *Porter*, this Court found good cause for allowing an untimely Rule 37 petition. We held:

> In light of the fact that this is a case involving the death penalty and the fact that Rule 37.5 has in effect cured the instant situation from recurring, coupled with the ambiguous circumstances surrounding appellant's legal representation, and the requirements of due process, we hereby hold that fundamental fairness, *in this narrowest of instances where the death penalty is involved*, dictates an exception in the present matter to allow appellant to proceed with his Rule 37 petition.

*Id*. at 19-20 (emphasis in original). In allowing Porter to proceed, this Court noted that Rule 37.5 evolved from Act 925 of 1997 (Ark. Code Ann. §§ 16-91-201 to -206 (Supp. 1997) (Arkansas Effective Death Penalty Act of 1997)), "where the General Assembly expressly noted that the purpose of the Act was to comply with federal law by instituting a comprehensive state court review." *Id*. at 19 (citing Ark. Code Ann. § 16-91-204). We also noted our prior holding in *Porter v. State*, 332 Ark. 186, 964 S.W.2d 184 (1998), that in death cases where a Rule 37 petition is denied on procedural grounds, great care should be exercised to assure that the denial rests on solid footing. *Id*.

Here, appellant contends that Rule 37.5 creates a specific entitlement to counsel in a capital case for the purpose of pursuing relief via Rule 37. He further contends that that entitlement to counsel means "conflict-free" counsel (citing *Wood v. Georgia*, 450 U.S. 261 (1981)), and that because the attorney appointed by the circuit court moved to be relieved on the basis of a conflict of interest and *was* relieved on that basis, he was not provided Rule 37.5 counsel prior to the expiration of the filing period. We agree.

■ We noted in *O'Brien v. State*, 339 Ark. 138, 3 S.W.3d 332 (1999) that there is no constitutional right to an attorney in State postconviction proceedings; however, in *O'Brien*, we distinguished our holding in *Porter* based on the fact that *Porter* was a death

penalty case decided under Rule 37.5; *O'Brien* was not. Further, as we pointed out in *Porter*, while there is no constitutional right to a postconviction proceeding, when the State undertakes the role of providing such, it *must* comport with due process and be fundamentally fair. *See Porter*, 339 Ark. at 18 (*citing Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997)).

■■ This Court's pronouncements in cases following *Porter* suggest that Rule 37.5 cases require an examination of whether it is "fundamentally fair" to require an inmate on death row to abide by the stringent filing deadlines when he was under the impression he was represented by counsel and that said counsel was timely filing the proper pleadings on his behalf. *Porter*, 339 Ark. at 18; *see O'Brien v. State, supra; Coulter v. State*, 340 Ark. 717, 13 S.W.3d 171 (2000). The obvious concern in the instant case is that the State has opted to specifically provide a postconviction process for persons under a sentence of death through Rule 37.5. Rule 37.5 mandates very specific requirements, including a level of quality of appointed counsel for persons pursuing Rule 37.5 relief. In addressing whether the strict application of the jurisdictional time limits would be fundamentally fair in the instant case, the following facts are of relevance to consider:

1) In the instant case, appellant requested the appointment of counsel for the purpose of pursuing Rule 37 relief at his Rule 37.5 hearing; he inquired as to whether the circuit court was going to relieve the counsel appointed based on the asserted conflict of interest; and, he eventually did file a Rule 37 petition via Mr. Rosenzweig. Clearly, appellant wanted to pursue Rule 37 relief.

2) The Commission, shortly after appointment, moved to be relieved based upon a conflict of interest. The asserted conflict was that appellant's trial counsel, Maxie Kizer, would soon be employed by the Public Defender Commission and under the direct supervision of Ms. Didi Sallings. Thus, the Commission would be investigating claims of ineffective assistance of counsel against one of its employees. Ms. Sallings also submitted that it was a conflict of interest for her to represent appellant because she had previously represented him in a different capital murder case, and she could conceivably be called as a witness at the Rule 37.5 hearing.

3) Rule 37.5(c)(5) specifically states that a circuit court *shall not* appoint an attorney under the rule if that attorney represented

the person under a sentence of death at trial or on direct appeal to the Arkansas Supreme Court unless the person requests as such. Further, the rule states that if such an attorney is appointed, the circuit court shall appoint a second attorney who has not represented the person. Thus, this rule was violated because Ms. Sallings represented appellant in a different trial, under a sentence of death, and the circuit court did not appoint a second attorney to assist. Mr. Kizer's employment with the Commission further complicated the situation.

■ Unlike *Porter*, this case does not evolve from a lack of notice to the appellant. He was aware in this case that the Commission had been appointed but had moved to be relieved. Appellant was, however, waiting for the circuit court to either relieve the Commission and appoint new counsel who would file his petition, or to deny the Commission's motion so that the Commission would then file his petition. The end result is that a breakdown in the State-provided postconviction proceeding led to the dismissal of appellant's petitions on procedural grounds, and this Court has held that great care should be taken to assure that the denial rests on solid footing. *Porter*, 339 Ark. at 19.

■ *Porter* and the cases that follow suggest that Rule 37.5 requires a heightened standard of review of capital cases because the State has undertaken, via Act 925 of 1997 and Rule 37.5, to provide collateral relief so as "to eliminate the need for multiple federal habeas corpus proceedings in death cases." *Id.* Again, while there is no constitutional right to a postconviction proceeding, when the State undertakes the role of providing such, as it has done here, it must comport with due process and be fundamentally fair. *Id.* at 18.

■ Therefore, pursuant to *Porter*, we hold that fundamental fairness dictates that the appellant in this case be afforded an opportunity to have his claims considered. For all of the above-stated reasons, we hereby reverse and remand the case.

Reversed and remanded.

GLAZE, J., concurs because *Porter v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999), requires reversal and remand.