Damien Wayne ECHOLS *v.* STATE of Arkansas

CR 94-928                                      125 S.W.3d 153

Supreme Court of Arkansas
Opinion delivered October 16, 2003

[Petition for rehearing denied November 13, 2003.]

*Mandell & Wright, L.L.P.* (Houston), by: *Edward A. Mallett*; and *Alvin Schay* (Little Rock), for petitioner.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for respondent.

DONALD L. CORBIN, Justice. Petitioner Damien Wayne Echols was convicted in the Craighead County Circuit Court of three counts of capital murder and sentenced to death. This court affirmed his conviction and sentence in *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996), *cert. denied*, 520 U.S. 1244 (1997). He now petitions this court to reinvest jurisdiction in the circuit court to allow him to seek a writ of error *coram nobis*. He offers two grounds[1] for which he claims the writ is warranted: (1) he was incompetent at the time of trial, and (2) exculpatory evidence not previously provided to the defense has been discovered. For the reasons set out below, we deny the petition.

We note at the outset that a writ of error *coram nobis* is an extraordinarily rare remedy, known more for its denial than its approval. *Dansby v. State*, 343 Ark. 635, 37 S.W.3d 599 (2001) (*per curiam*); *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* *Coram nobis* proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The writ is only available to address certain errors of the most fundamental nature that are found in one of four categories: (1) insanity at the time of trial; (2) a coerced guilty plea; (3) material evidence withheld by the prosecutor; or (4) a third-party confession to the crime that occurs during the time between conviction and appeal. *Id.*

---

[1] Echols originally raised the additional ground that he was being administered drugs without his consent while he was in jail awaiting trial. During oral argument before this court, counsel for Echols conceded that this allegation would not qualify as a separate *coram nobis* claim, but rather, only as evidence on his claim of incompetency.

■ Where the writ is sought after the judgment has been affirmed on appeal, the circuit court may entertain the petition *only* after this court grants permission. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (*per curiam*); *Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997). This court will grant such permission only when it appears the proposed attack on the judgment is meritorious. *Jenkins v. State*, 223 Ark. 245, 265 S.W.2d 512, *cert. denied*, 347 U.S. 956 (1954) (*per curiam*) (citing 24 C.J.S. *Criminal Law*, 1606c(1)). In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Id*. With this standard in mind, we review Echols's claims.

## I. Competency at Trial

Echols's first ground for relief is his claim that he was incompetent at the time of his trial, in February and March 1994. He relies upon the affidavits of Dr. George W. Woods, dated February 9, 2001, and May 15, 2001, wherein Dr. Woods concluded that Echols was incompetent at the time of his trial, based upon his review of Echols's prior mental-health records, the trial transcript, video tapes of Echols's testimony, and interviews with Echols conducted in December 2000. Echols asserts that he has only recently been made aware of the extent of the mental problems that he was facing at the time of trial, and that his illness actually prevented him from being aware of his incompetency. He further claims that before and during his trial, he was administered drugs without his consent.

■ As a procedural matter, the State invites us to reconsider the viability of the writ of error *coram nobis* as a mechanism for challenging competency after the fact. The State contends that the writ is no longer necessary because there is a careful statutory scheme in place to challenge competency at trial, as well as adequate postconviction procedures. This court does not lightly overrule cases and applies a strong presumption in favor of the validity of prior decisions. *See State v. Singleton*, 340 Ark. 710, 13 S.W.3d 584 (2000); *McGhee v. State*, 334 Ark. 543, 975 S.W.2d 834 (1998) (*superseded by statute on other grounds*). As a matter of public policy, it is necessary to uphold prior decisions unless a great injury or injustice would result. *Id*. (citing *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996)). We decline the

State's invitation, as it is not necessary to overrule our precedent in this case. Instead, we hold that Echols has not been diligent in pursuing this claim.

██ Although there is no specific time limit for seeking a writ of error *coram nobis*, due diligence is required in making an application for relief. *Larimore*, 327 Ark. 271, 938 S.W.2d 818. In the absence of a valid excuse for delay, the petition will be denied. *Id.* (citing *Troglin v. State*, 257 Ark. 644, 519 S.W.2d 740 (1975)). This court has held that due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) he could not have, in the exercise of due diligence, presented the fact at trial; or (3) upon discovering the fact, did not delay bringing the petition. *Id.* (citing John H. Haley, Comment, *Coram Nobis and the Convicted Innocent*, 9 Ark. L. Rev. 118 (1954-55)). *See also Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984).

The exhibits submitted with Echols's petition and the records from his direct appeal demonstrate that the defense team was aware of Echols's history of mental treatments at the time of trial. For example, the report compiled by defense investigator Glori Shettles, which is contained in the trial record, reveals the extent of Echols's mental treatments at the East Arkansas Regional Mental Health Center (1992-93), St. Vincent's Hospital of Portland, Oregon (1992), and Charter Hospital of Little Rock (June and September 1992). Indeed, an entire volume of the record from his trial is devoted to the records from the foregoing treatment centers, as well as documents submitted by Echols to the Social Security Administration (SSA) for the purpose of obtaining disability payments. These are largely the same records that Echols now relies on to support his petition for a writ of error *coram nobis*.

Based on the foregoing, it is clear that Echols has not been diligent in pursuing the issue of his competency. It has been nearly ten years since his trial was held, in February and March 1994. The medical records upon which he now relies were not only available prior to the date of his trial, they were, in fact, offered by the defense at trial and considered by the jury. His claim that he was not aware, at the time of his trial, of the extent of his mental problems is not credible, in the face of the evidence to the contrary. Indeed, Echols himself testified at trial that he had been diagnosed as manic-depressive and that he was taking medication for his illness.

■ Furthermore, Echols's current counsel have had access to the foregoing records since 1997, when the defense filed the first Rule 37 petition, and throughout the Rule 37 proceedings, which lasted until June 1999. Thus, at a minimum, Echols could have pursued the issue of his competency within the Rule 37 proceedings, either as part of his claim of ineffective assistance of counsel or as a freestanding issue. *See Matthews v. State*, 332 Ark. 661, 966 S.W.2d 888 (1998) *(per curiam)*; *Burnett v. State*, 293 Ark. 300, 737 S.W.2d 631 (1987) *(per curiam)*. In sum, given the circumstances of this case, waiting some ten years to raise the issue of his competency to stand trial is not exercising due diligence.

Before we leave this point, we must address Echols's suggestion that, at a minimum, we should remand this matter for the trial court to determine whether his trial counsel were ineffective for failing to raise the issue of his competency at trial. He claims that this court's holding in *Jackson v. State*, 343 Ark. 613, 37 S.W.3d 595 (2001), excuses the failure of his current counsel to raise this issue under Rule 37. In *Jackson*, this court held that due process and fundamental fairness required consideration of the merits of the appellant's petition, even though it was not filed within the strict time limits set out in Rule 37.5. This issue is not implicated here.

■ As noted above, Echols's postconviction proceedings went on for some two years in the trial court. He clearly had ample opportunity to pursue a claim of ineffectiveness for counsel's failure to challenge his competency. The fact that he failed to do so, however, does not mean that the Rule 37 proceedings themselves failed to comport with due process. Were we to allow Echols to raise this claim at this late date, we would be thwarting the concept of finality in legal decisions. Furthermore, as the State points out, we would be going against our own precedent, as this court previously foreclosed any further attempts by Echols to pursue new claims for postconviction relief. *See Echols v. State*, 344 Ark. 513, 42 S.W.3d 467 (2001). Accordingly, we deny relief on this ground.

## II. Material Evidence Withheld from the Defense

For his second ground for *coram nobis*, Echols asserts that exculpatory evidence has recently come to his attention that was not provided to the defense prior to trial. Officer John P. Slater, of the West Memphis Police Department, executed an affidavit on

February 20, 2001, in which he stated that between 5:00 and 5:30 a.m. on May 6, 1993, he and his lieutenant thoroughly searched the area at Ten Mile Bayou where the victims in this case were later found. Slater states that they had heavy-duty flashlights and some predawn light, and that he is confident that they would have discovered the bodies if they had been present at the time. Slater also stated that within forty-eight hours of the bodies being discovered, he heard a radio communication that an individual had been stopped on Interstate 40, near the crime scene, and ques-tioned. Slater said that when the individual was told that the police were inquiring into the murders of the three boys, the individual fled. Thereafter, Slater stated, a helicopter from Memphis, Ten-nessee, was dispatched to help look for the fleeing individual.

On this point, it appears that Echols has exercised due diligence in presenting this issue. Echols was unaware of these facts at the time of trial, and it does not appear from the record that he could have presented these facts at trial. His petition reflects that his counsel only received Slater's information less than twelve months before they filed the current petition. Notwithstanding his diligence, we reject this claim because Echols has not demon-strated that the failure to reveal this information to the defense amounted to a fundamental error, such that there is a reasonable probability that the judgment of conviction would not have been rendered.

■ A mere claim of newly discovered evidence in itself is not a basis for relief under *coram nobis*. *Dansby*, 343 Ark. 635, 37 S.W.3d 599. The petitioner must show that a fundamental error occurred, such that "the facts as alleged as grounds for its issuance are such that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the exculpatory evidence been disclosed at trial, not that the newly discovered evidence *might* have produced a different result had it been known to judge and jury." *Id.* at 637, 37 S.W.3d at 603 (citing *Larimore*, 341 Ark. 397, 17 S.W.3d 87).

Here, the evidence presented at trial showed that the vic-tims' bodies were discovered in a ditch near Ten Mile Bayou around 1:30 p.m. on May 6, 1993. West Memphis Police Detec-tive Mike Allen testified that he saw a shoe floating in the water filling the ditch. When he entered the water to reach for the shoe, he felt something strike his foot; it was the submerged body of one of the victims. Shortly thereafter, the bodies of the other two

victims were found about twenty-five feet downstream, also submerged. Due to the submerged nature of the bodies, Slater's testimony is not inconsistent with Allen's. The bodies were not initially visible from out of the water during the afternoon light; hence, it does not strain credulity to think that they would not be visible during the early-morning, predawn hours.

█ Slater's affidavit is silent as to whether he actually got into the water to check for the boys. Echols asserts that this silence requires this court to remand the matter to the trial court, at least for the limited purpose of taking Slater's full testimony. This argument ignores the fact that it is his burden to show that the writ is warranted. We will not undertake to reinvest jurisdiction in the trial court just for the purpose of allowing the petitioner to conduct some sort of fishing expedition. He has had an adequate opportunity to prove the materiality of this evidence, and he has failed to do so. At best, Slater's testimony constituted conflicting evidence as to the discovery of the victims and, particularly, their time of death. The State's case, however, did not emphasize a time of death. As such, Echols has failed to show a reasonable probability that the judgment of conviction would not have been rendered or would have been prevented, had Slater's testimony been made known to the defense.

██ Likewise, Echols has failed to show the materiality of Slater's testimony about another individual fleeing from the police in the area near the crime scene. This evidence is not exculpatory, and it would not have been admissible at trial. This court stated as much in Echols's direct appeal: "We have held that evidence that a third party may have committed the crime is inadmissible unless it points directly to the guilt of the third party. If it creates no more than an inference or conjecture as to the third party's guilt, it is inadmissible." *Echols*, 326 Ark. 917, 962, 936 S.W.2d 509, 531 (citing *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993)). The testimony offered by Slater did not point directly toward the guilt of any particular third party and raised nothing more than an inference or conjecture that someone else might have committed the murders. Accordingly, Echols is entitled to no relief on this claim, and we therefore deny his petition for leave to seek a writ of error *coram nobis* in the trial court.

Petition to reinvest jurisdiction in the circuit court denied.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur in the majority's conclusion that we must deny Echols's petition to reinvest the circuit court with jurisdiction to consider his request for a writ of error *coram nobis*. I write, however, to express my doubts that a defendant must *always* be diligent in raising a claim of competency to stand trial. All parties agree that a defendant may not waive his right to be tried while competent. At least one member of the United States Supreme Court has expressed that view explicitly. *See Riggins v. Nevada,* 504 U.S. 127, 140, 112 S.Ct 1810, 1817 (Kennedy, J., concurring) ("Although the majority is correct that this case does not require us to address the question whether a defendant may waive his right to be tried while competent, in my view a general rule permitting waiver would not withstand scrutiny under the Due Process Clause, given our holdings in *Pate* and *Drope*."). Such a premise is well-founded and supported by the precepts of due process announced by the Supreme Court.

The Supreme Court has repeatedly held that convicting an incompetent defendant violates due process. *See Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373 (1996); *Medina v. California,* 505 U.S. 437, 112 S.Ct. 2572 (1992); *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836 (1966). The Supreme Court has further interpreted *Pate, supra,* to mean that the right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination. *See Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, n.4. (1996) (citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836 (1966)). It is true that a criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution. *See U.S. v. Mezzanatto,* 513 U.S. 196, 115 S.Ct. 797 (1995). However, the Supreme Court has explained that it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial. *See Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842 (1966). Succinctly stated, "[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial . . . ." *Riggins v. Nevada,* 504 U.S. 127, 140, 112 S.Ct 1810, 1817 (Kennedy, J., concurring).

Clearly, Echols holds a substantive due process right to be tried while competent. The majority correctly states that under our case law due diligence is required in making an application to reinvest jurisdiction for writ of error *coram nobis*. Based on the Supreme Court's interpretation of due process in the above-cited cases, I do not believe this court can legitimately dismiss Echols's competency claim, as the majority concludes, solely for want of diligence. In fact, we recently noted in *Larimore v. State,* that we have allowed a trial court to issue a writ of error *coram nobis* for the purpose of inquiring into the defendant's competency to stand trial when it was not raised at the time of trial. 327 Ark. 271, 938 S.W.2d 818 (1997) (citing *Hydrick v. State,* 104 Ark. 43, 148 S.W. 541 (1912)). Nonetheless, under the factual circumstances in this case, I agree that the writ should be denied because the circuit court made a determination that Echols was competent to stand trial and Echols failed to appeal that ruling.

After Echols was convicted and sentenced to death, he filed a *pro se* motion waiving all points on appeal concerning his death sentence. *See Echols v. State,* 321 Ark. 497, 902 S.W.2d 781 (1995). We held that a remand to the trial court was required for a determination of whether Echols was competent to abandon further litigation of his death sentence. *Id.* After we had remanded the case for the competency determination, Echols filed a motion to withdraw his request to waive the death-penalty issues, and asked us to proceed with the full appeal. *See Echols v. State,* 323 Ark. 40, 912 S.W.2d 11 (1996). The State asked that we not recall the case until the competency determination was made, because such a determination would protect the interests of both the State and Echols in future proceedings. *Id.* at 41, 912 S.W.2d at 11. We agreed that the State's argument had merit and waited to proceed with Echols's appeal until the circuit court had certified its findings to us. *Id.* In the competency hearing, the circuit court made the following finding:

> [I find that] Damien Echols is competent *and was competent during the course of his trial* and that he's voluntarily and knowingly and intelligently withdrawn his request to waive the punishment aspect of the previous trial.

(Emphasis added.)

Echols could have appealed the ruling that he was competent during the course of the trial; but, in view of this finding, he *competently* chose not to do so. Thus, the issue is procedurally barred. In my view, it is this procedural bar, rather than a waiver of his right to stand trial while competent, that now precludes Echols from obtaining a writ on this issue. Additionally, regarding his petition for a writ of error *coram nobis*, most of the records on which Echols now relies were available to the circuit court when it determined he was competent to stand trial. As such, Echols's petition seeking reinvestment of jurisdiction in the circuit court to determine the writ of error *coram nobis* is properly denied.