Paul E. Danielson, Justice, dissenting. Because it does not appear to me that Isom’s proposed attack on his judgment is meritorious, I would deny his petition to reinvest jurisdiction; therefore, I respectfully dissent. While not apparent from the majority’s decision today to grant Isom’s petition to reinvest, our law is more than well settled that the writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. See Roberts v. State, 2013 Ark. 56, 425 S.W.3d 771. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. See id. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the circuit court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. See Howard v. State, 2012 Ark. 177, 403 S.W.3d 38. The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. See Newman v. State, 2009 Ark. 539, 354 S.W.3d 61. We have held that a writ of error coram nobis is available to address only certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. See id. Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making | Ran application for relief. See id. In the absence of a valid excuse for delay, the petition will be denied. See id. Due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not lielay in bringing the petition. See id. Where the writ is sought after the judgment has been affirmed on appeal, the circuit court may entertain the petition only after this court grants permission. See Echols v. State, 354 Ark. 414, 125 S.W.3d 153 (2003). This court will grant permission only when it appears the proposed attack on the judgment is meritorious. See id. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. See id. Isom’s petition to reinvest consists of several claims, each of which asserts that the prosecutor withheld material evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). When examining allegations involving the withholding of material evidence in the context of a petition to reinvest jurisdiction to seek a writ of error coram nobis, this court has done so under Brady, which requires the State to disclose all favorable evidence material to the guilt or punishment of an individual. See Newman, 2009 Ark. 539, 354 S.W.3d 61; see also Howard, 2012 Ark. 177, 403 S.W.3d 38; Cloird v. State, 349 Ark. 33, 76 S.W.3d 813 (2002) (per curiam). With respect to Brady claims in this context, we have explained as follows: For a true Brady violation, “[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either -willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Evidence is material “if 19there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Cook v. State, 361 Ark. 91, 105, 204 S.W.3d 532, 540 (2005) (quoting Strickler, 527 U.S. at 280, 119 S.Ct. 1936). The “reasonable probability” standard is applied “collectively, not item by item,” such that the “cumulative effect” of the suppressed evidence, and not necessarily each piece separately, must be material. Kyles v. Whitley, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The rule set out in Brady also “encompasses evidence ‘known only to police investigators and not to the prosecutor.’ ” Strickler, 527 U.S. at 280-81, 119 S.Ct. 1936 (quoting Kyles, 514 U.S. at 438, 115 S.Ct. 1555). “In order to comply with Brady, therefore, ‘the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in this case, including the police.’ ” Strickler, 527 U.S. at 281, 119 S.Ct. 1936 (quoting Kyles, 514 U.S. at 437, 115 S.Ct. 1555). Newman, 2009 Ark. 539, at 13-14, 354 S.W.3d at 69. Although the majority finds apparent merit in Isom’s final claim that the State suppressed information that pointed to the guilt of others, I cannot agree. Isom claims that Kevin Green, an inmate at the Drew County jail, told prosecutors and law enforcement that he knew the whereabouts of scissors that were used to kill Mr. Burton, told other inmates that Isom was innocent of the murder, and told an inmate that another man, Jerry Avery, had confessed to the crimes. Isom asserts that Green was eventually taken from the jail to search a trailer in which a pair of scissors was found and was later released from jail upon recommendation of the prosecutor. As further evidence of the State’s suppression, Isom points to the statements of Frank Spain, a prosecutor. Isom avers that, prior to trial, he subpoenaed Spain to testify about the aforementioned search; but, the circuit court quashed the subpoena after Spain “testified falsely that no scissors had been recovered from the search led by Kevin Green.” Isom then points to Spain’s statements to the circuit court during Isom’s postconviction hearing, in which Green denied receiving any consideration for information relating to the crimes. Isom maintains that |inafter Green testified, Spain went on the record to state that Green’s testimony was false, in that Green had been released on his own recognizance after Spain and officers, acting on information from Green, searched a trailer home and recovered a pair of scissors, which were submitted to the crime lab for testing. Isom submits that the State has never disclosed any reports relating to Green’s statements about the murder weapon or requests for interviews made by inmates in whom Green had confided. Isom avers that, had Spain testified truthfully prior to Isom’s trial, his subpoena would not have been quashed, and his trial counsel could have called Spain to testify regarding Green’s knowledge of the crimes. He further opines that his counsel could have then pursued an investigation into the credibility of the inmates’ statements and presented evidence to the jury of other suspects, such as Avery or even Green. While Spain’s actions in this matter are certainly disconcerting,[1] Isom’s contentions Infalter in light of the fact that his trial counsel was clearly made aware of the other inmates’ alleged knowledge of Green’s statements, as evidenced by the record. During his postconviction hearing, Isom’s trial counsel recalled and acknowledged receiving, prior to Isom’s trial, certain letters that “tended1 to implicate Mr. Green ... purportedly knowing that a Jerry Don Avery ... had confessed to [killing Mr. Burton and assaulting Ms. Lawson].” Trial counsel further stated that he attempted to speak with Green, but was unable to locate 112him. He testified, however, that he neither attempted to find Avery, nor did he talk to the four inmates who had written the letters. It is clear that trial counsel was well aware of the existence of Kevin Green and the potential information that he might have possessed, and counsel could have made use of this information in defending Isom. Further, this court has already held that Isom did not “show a reasonable probability that but for counsel’s failure to call Green as a witness at trial, the result would have been different.” Isom v. State, 2010 Ark. 495, at 3, 370 S.W.3d 491, 494. To the extent that information regarding any alleged scissors might have been suppressed by the State, the fact that Isom has alleged a Brady violation alone is not sufficient to provide a basis for error-co-ram-nobis relief. See Camp v. State, 2012 Ark. 226, 2012 WL 1877371 (per curiam). Assuming that the alleged withheld evidence meets the requirements of a Brady violation and is both material and prejudicial in order to justify issuance of the writ, the withheld material evidence must also be such as to have prevented rendition of the judgment had it been known at the time of trial. See id. To merit relief, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. See id. In order to carry his burden to show that the writ is warranted, Isom would have to demonstrate that, had the information been available that scissors containing no DNA were discovered following a tip by Green, the evidence would have been sufficient to have prevented rendition of the judgment.[2] See, e.g., Echols, 354 Ark. 414, 125 S.W.3d 153. This 113he cannot do. As we outlined in Isom’s direct appeal, there was an abundance of evidence to support his conviction for causing the death of Mr. Burton in the course of committing several felonies under circumstances manifesting extreme indifference to the value of human life:[3] Mrs. Lawson identified him as her attacker in the attempted murder and rapés and as the person who was physically abusing Mr. Burton. She further testified that Mr. Isom demanded and received money and her ring, using the threat of the broken scissors. Her testimony also is sufficient to support a burglary conviction in that she stated that he pushed his way into Mr. Burton’s trailer home and proceeded to commit rape and aggravated robbery. And, finally, her in-court identification of Mr. Isom, as well as the body hair found in her vagina connecting him to the rape, placed him at the scene where Mr. Burton was murdered. While Mrs. Lawson did not specifically see Mr. Isom stab Mr. Burton with scissors or beat Mr. Burton with a lamp, she saw Mr. Isom with the scissors standing on Mr. Burton’s head and then physically lying on top of him. She also heard his threats. She was then beaten, knocked unconscious, and choked by Mr. Isom. Mr. Burton’s body was discovered the next morning, and his death was caused by multiple sharp and blunt force injuries. We conclude that there was more than sufficient evidence, direct and circumstantial, that Mr. Isom caused the death of Mr. Burton in the course of committing several felonies under circumstances manifesting extreme indifference to the value of human life. Isom, 356 Ark. at 170-71, 148 S.W.3d at 267. In light thereof, it simply does not stand to reason that the existence of alleged scissors containing no DNA would have been sufficient to prevent rendition of the judgment. Without any showing of prejudice, Isom has failed to present a Brady claim having apparent merit. This court is not required to accept the allegations in a petition for writ of error coram nobis at face value. See Penn v. State, 282 Ark. 571, 670 S.W.2d 426 (1984). Moreover, it is |Ha petitioner’s burden to show that the writ is warranted. See Echols, 354 Ark. 414, 125 S.W.3d 153. This court will not undertake to reinvest jurisdiction in the circuit court just for the purpose of allowing a petitioner to conduct some sort of fishing expedition. See id. Here, Isom has simply failed to show that, were we to reinvest, he could meet his burden to demonstrate that the writ is warranted; consequently, he has not shown that his proposed attack on the judgment appears meritorious.[4] Accordingly, I would deny Isom’s petition to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis. Hannah, C.J., and Goodson, J., join. . Indeed, Spain's statements appear to be in conflict. At the hearing on the motion to quash, Spain testified that a person by the name of Kevin Green who was represented by Gary Potts stated that he had some information regarding the, where he thought the murder weapon was. He asked for certain things in order to provide that information. He wanted to be released from jail, either pending his sentencing date, or pending bed space. I can't recall which of the two it was. The officers working the case ... came to me with this. I believe Mr. Potts, also, indicated to me that this person had this information. I agreed to his wants. He had already stated that he would take a five year plea. So we went out to the house. We entered the house. And I believe I was the last person in the house. They looked for the item. No item was found and we left. [[Image here]] [The search] didn't [reveal anything.] He later testified at Isom's Rule 37 hearing, stating as follows: The Court will recall when I asked a question [of Green during this hearing], the last question I believe I asked was about whether or not he had told anybody these statements or given any kind of statements about the Isom case to the police. I asked that to clarify answers he'd given, and his answer was no. Now, I feel compelled under my ethical duty to inform the Court that I believe that testimony was false. Now, whether or not he remembers incorrectly or gave a false statement, I can't say to the Court. But the events that are somewhat depicted in one of those letters were some truth in that Mr. Green was in court on the day he was OR’d. He apparently made contact with someone in the state police, either Scott Woodward or to John Dement. They approached me that day, stated that he had some information that he wanted to give, but wanted to be OR'd before he would give that information. And my response to that was, well, I’m not going to OR anybody until I know what the information is going to be. So I think what we agreed to do was, is that he would tell them the information. We would check that information out. If it proved to be anything that could be useful, then we would agree to OR him. It is my recollection that either at a lunch break or some other time that afternoon that day in court he gave some information about where some evidence might be collected. They got him in the car. Had him go in a car. It is true that I went with them to this location.... I don’t know if we went in one car or two cars. We went to a trailer house, Your Honor, or my recollection was a trailer house. The officers went in and searched the trailer house, and I believe recovered a pair of scissors from that house. We returned back. After they recovered whatever it was, I went and looked at whatever it was they recovered. Came back, and I believe he was OR'd. [Green] alleged [the information he had] to be related to this case, that these scissors could have been the scissors used in the commission of the offense.... When we go back and look at the file, the one documentation that I know that covers these files, these scissors were sent to the crime lab for testing.... And at that time the testing results showed no evidence of any sort, any relationship to that. I mean, there was no DNA, no nothing on them to that. . The majority states that it is not in a position to exalt one version of Spain's testimony over the other; but, there is no need to even do so. Neither version renders Isom’s proposed attack meritorious. Regardless of whether the "evidence withheld" consists of no scissors having been found or scissors with no DNA having been found, that information, even if disclosed, simply cannot be said to have prevented the rendition of the judgment against Isom. . Isom did not challenge on appeal the sufficiency of his convictions for aggravated robbery, residential burglary, rape, or attempted capital felony murder. See Isom v. State, 356 Ark. 156, 148 S.W.3d 257 (2004). . Nor do any of Isom's other claims for error-coram-nobis relief appear to have merit, which for the sake of brevity, I will not discuss here in detail. Suffice it to say that each of his claims fails because either (1) the record demonstrates that the information was known by Isom's trial counsel at the time of trial, or (2) the claim lacks factual substantiation. See, e.g., Burks v. State, 2013 Ark. 188, 2013 WL 1858857 (per curiam) (holding that a petitioner must factually substantiate a claim that information was actually withheld from trial counsel); Howard, 2012 Ark. 177, 403 S.W.3d 38 (holding that issues known at the time of trial and could have been addressed cannot serve as a basis for error-coram-nobis relief).