
# SUPREME COURT OF ARKANSAS

**No.** CR–12–694

|  |  |  |  |
|---|---|---|---|
| ANDREW R. ENGRAM | | **Opinion Delivered** October 31, 2013 | |
| | APPELLANT | | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-97-2685] | |
| STATE OF ARKANSAS | | | |
| | APPELLEE | HONORABLE BARRY SIMS, JUDGE | |
| | | REVERSED AND REMANDED. | |

## DONALD L. CORBIN, Associate Justice

Appellant Andrew R. Engram appeals the order of the Pulaski County Circuit Court dismissing his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.5 (2013). For reversal, Engram asserts the following points of error: (1) both the circuit court and this court had jurisdiction to hear his Rule 37 petition; (2) a hearing was warranted on whether Engram established good cause for filing a belated Rule 37 petition; (3) a hearing was warranted on whether Engram's waiver of his right to file a Rule 37 petition was valid; (4) this court should hold that the protections of Rule 37.5 extend to petitioners who waive the right to file a Rule 37 petition under the advice of counsel; (5) under the rationale of *Anders v. California* this court should hold that potentially meritorious issues must be raised by appointed counsel in death cases on Rule 37; (6) this court should extend the mandatory *Robbins* review to Rule 37.5 in death cases. Because the circuit court erred in summarily dismissing Engram's Rule 37.5 petition, we reverse and remand for proceedings consistent with this opinion.

SLIP OPINION

Engram was charged with one count each of capital murder and rape in connection with the death of Laura White, a security guard working at Sears in North Little Rock. On January 28, 1999, a jury convicted him on both counts and sentenced him to death. This court affirmed his sentence and conviction on May 4, 2000. *See Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000), *cert. denied*, 531 U.S. 1081 (2001). This court's mandate subsequently issued on January 12, 2001. Shortly thereafter, the circuit court appointed attorney Lea Ellen Fowler to represent Engram in postconviction proceedings. At the first status hearing following her appointment, Fowler announced that she was still in the process of reviewing the case. The circuit court then scheduled the next status hearing for June 25, 2001. The deadline for filing a Rule 37 petition passed without any petition being filed on Engram's behalf. At the June 25 hearing, Fowler announced that she had not identified any issues to pursue in a Rule 37 petition and instead would proceed with a habeas petition in federal court. The circuit court briefly inquired of Engram if he was agreeable with his attorney's decision, and Engram replied that he was.

On January 9, 2002, Engram filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Arkansas. The next year, on April 18, 2003, Engram requested leave from the federal court to file an amended habeas corpus petition in order to raise additional grounds for relief, including a claim that he is mentally retarded and that his execution is barred under the Supreme Court's holding in *Atkins v. Virginia*, 536 U.S. 304 (2002). The federal district court granted Engram's motion to amend, but also raised sua sponte the question of whether Engram had presented his mental-retardation claim in state

2

court. Ultimately, the federal district court directed Engram to move to dismiss his amended petition without prejudice and granted him leave to file a second amended petition that would relate back to his original, timely filed petition. Engram filed the motion as instructed, and the federal court granted it on October 7, 2003.

Thereafter, on November 5, 2003, Engram filed in this court a "Motion to Recall the Mandate and Reopen the Case and Brief in Support." The motion was submitted as a case, and a briefing schedule was established.[1] In his brief to this court, Engram asserted that this court should recall its mandate and reopen his case based on the fact that, in 2002, the Supreme Court decided in *Atkins* that the execution of mentally retarded individuals violates the Eighth Amendment's prohibition on cruel and unusual punishment. This court denied Engram's motion. *Engram v. State*, 360 Ark. 140, 200 S.W.3d 367 (2004) (*Engram II*). In so doing, this court in *Engram II* reasoned that the issue of mental retardation could have been resolved by the trial court, if only Engram had presented evidence bearing on the issue and had asked for the circuit court to rule on the issue. *Id.* The court also rejected Engram's contention that his case was similar to *Robbins v. State*, 353 Ark. 556, 354 Ark. 1, 114 S.W.3d

---

[1]After the briefs were all filed and the case was ready for submission, Engram filed a "Motion to Continue Oral Argument and Stay of Proceedings." Therein, Engram requested permission to return to circuit court so that he could file a Rule 37 petition and allege, among other things, his mental-retardation claim under *Atkins*. Engram also alleged that his postconviction counsel had been ineffective in failing to investigate his case. At the conclusion of the motion, Engram elaborated and stated that he had learned that his appointed attorney allowed the time for filing his petition to lapse and contacted some local attorneys to find out how to fix her mistake. There were no specific facts alleged or parties named, and nothing was submitted in support of this conclusory allegation. This court denied the motion without comment.

217 (2003) (supplemental opinion on denial of reh'g), a case where this court had previously recalled its mandate. In concluding that Engram's case was different, this court explained as follows:

> This is simply not a case like *Robbins*, where the alleged error was an error in this court's own review of the case on appeal, and this court was asked to reopen the case to address its own error. Because *Robbins* was so strictly limited to its facts, this court made it clear that it would not expand the nature of cases in which it will recall a mandate it has already issued. Here, since it was Engram's burden to do so, he should have obtained a ruling on his mental retardation issue from the trial court before his trial ever started.

*Engram II*, 360 Ark. at 151, 200 S.W.3d at 372.

This court in *Engram II* also denied Engram's alternative request that he be allowed to file a petition for postconviction relief. In so doing, this court reasoned that counsel had been appointed for Engram, that Engram had agreed with his attorney's decision to forgo Rule 37 relief, and that the time for filing any such petition had lapsed.[2] This court further rejected Engram's attempted reliance on *Jackson v. State*, 343 Ark. 613, 37 S.W.3d 595 (2001), and *Porter v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999), cases in which this court allowed petitioners to file belated Rule 37 petitions, as factually distinguishable. The court in *Engram II* concluded as follows:

> Here, unlike the situations in *Jackson* and *Porter*, there has been no confusion about when filing deadlines occurred or about whether counsel had been appointed. Engram and his Rule 37 attorney made a deliberate decision not to pursue

---

[2]Although it had no effect on the outcome, we observe that the court mistakenly states that, pursuant to Rule 37.2, Engram had sixty days from the date our mandate issued to file his Rule 37 petition. As Engram was sentenced to death, his postconviction remedy was governed by Rule 37.5, which allows a petitioner to file a postconviction petition within ninety days from the date of an order appointing Rule 37 counsel.

SLIP OPINION

postconviction relief. There is no provision in our law that provides for petitions for "post-postconviction relief," i.e., a mechanism for filing an ineffective-assistance-of-counsel petition with respect to the counsel appointed to handle the Rule 37 petition. Engram's state court remedies with respect to postconviction relief have been exhausted.

*Id.* at 154, 200 S.W.3d at 375.

Following this court's decision in *Engram II*, attorneys from the office of the Federal Public Defender for the Eastern District of Arkansas filed a motion in this court requesting that they be appointed to represent Engram before this court and all other Arkansas state courts. This motion was filed on September 15, 2006. On September 27, 2006, before this court ruled on the motion, those same attorneys filed a petition for postconviction relief on Engram's behalf in the Pulaski County Circuit Court. Therein, Engram asserted numerous allegations of ineffective assistance of trial counsel, as well as allegations that he was mentally retarded and therefore could not be executed. Along with the petition, Engram also filed a motion for leave to file an overlength brief, and a memorandum of law regarding the timeliness of the Rule 37 petition. Thereafter, on October 5, 2006, this court entered an order denying the federal public defender's appointment request.

Engram's Rule 37 petition inexplicably languished in the circuit court for almost six years until April 30, 2012, when the circuit court entered an order summarily dismissing the petition as untimely. No hearing was ever held on the petition or the allegation of its timeliness. Once again, attorneys from the Federal Public Defender's Office filed a motion with this court seeking to be recognized as counsel for Engram. This court granted the

5

motion, and Engram filed a timely notice of appeal from the order denying his request for Rule 37 relief.

As an initial matter, we must address the State's contention that we should dismiss the instant appeal because of a lack of jurisdiction. According to the State, Engram's failure to file a petition within the ninety-day time limit set forth in Rule 37.5(e) is a procedural bar to the relief he now seeks. Engram asserts that he is not procedurally barred in this instance because the circuit court was never divested of its jurisdiction. Alternatively, Engram asserts that he is at least entitled to a hearing on the issue of whether he has established good cause for filing a belated Rule 37 petition.

It is true that this court has stated that the filing deadline of Rule 37.2 is jurisdictional in nature. *Murphy v. State*, 2013 Ark. 243 (per curiam); *O'Brien v. State*, 339 Ark. 138, 3 S.W.3d 332 (1999) (per curiam). If the time limitations of the rule are not met, a trial court lacks jurisdiction to consider a Rule 37.1 petition. *Holliday v. State*, 2013 Ark. 47 (per curiam). Where the circuit court lacks jurisdiction, the appellate court also lacks jurisdiction. *Id.* (citing *Winnett v. State*, 2012 Ark. 404 (per curiam)); *see also Clark v. State*, 362 Ark. 545, 210 S.W.3d 59 (2005).

Contrary to the State's assertion, however, this court has never held that the ninety-day time limitation of Rule 37.5(e) is an absolute jurisdictional bar. Its reliance on this court's decision in *Porter*, 339 Ark. 15, 2 S.W.3d 73, to support such an argument, is simply unavailing. In *Porter*, where we considered an untimely filing of a Rule 37 petition in a death-penalty case, there was a question as to whether the petitioner had received appointed

counsel. This court specifically held that the time requirement of Rule 37.2 was jurisdictional in nature, citing to our prior decision in *Petree v. State*, 323 Ark. 570, 920 S.W.2d 819 (1995), a noncapital case. In fact, *Porter* was not even governed by the dictates of Rule 37.5, as it predated implementation of that rule. Nevertheless, this court noted that Rule 37.5 had been implemented in an effort to comply with the requirements of federal law by instituting a comprehensive state-court review. The court in *Porter* ultimately concluded that good cause was established for the petitioner's failure to timely file a Rule 37 petition, and explained as follows:

> In light of the fact that this is a case involving the death penalty and the fact that Rule 37.5 has in effect cured the instant situation from recurring, coupled with the ambiguous circumstances surrounding appellant's legal representation, and the requirements of due process, we hereby hold that fundamental fairness, *in this narrowest of instances where the death penalty is involved*, dictates an exception in the present matter to allow appellant to proceed with his Rule 37 petition.

*Id*. at 19, 2 S.W.3d at 76.

Similarly, in *Jackson*, 343 Ark. 613, 37 S.W.3d 595, this court addressed whether the strict application of the jurisdictional time limits would be fundamentally fair when applied to a person under a sentence of death. *Jackson* also dealt with an untimely Rule 37 petition in a death case where there was some confusion about when the petitioner's attorney had been appointed. The *Jackson* court recognized that if the case before it were a noncapital case then the general rule would be that the time limits set forth in Rule 37 are jurisdictional in nature and would apply. *Id*. The court pointed out, however, that it was presented with a case involving the death penalty, and explained as follows:

This Court's pronouncements in cases following *Porter* suggest that Rule 37.5 cases require an examination of whether it is "fundamentally fair" to require an inmate on death row to abide by the stringent filing deadlines when he was under the impression he was represented by counsel and that said counsel was timely filing the proper pleadings on his behalf. The obvious concern in the instant case is that the State has opted to specifically provide a postconviction process for persons under a sentence of death through Rule 37.5. Rule 37.5 mandates very specific requirements, including a level of quality of appointed counsel for persons pursuing Rule 37.5 relief.

*Id*. at 618, 37 S.W.3d at 598 (citations omitted). Thus, this court in *Jackson* refused to hold

that the time limits of Rule 37.5(e) create an absolute procedural bar to the belated filing of

a postconviction petition in a capital case. The court in *Jackson* further explained as follows:

*Porter* and the cases that follow suggest that Rule 37.5 requires a heightened standard of review of capital cases because the State has undertaken, via Act 925 of 1997 and Rule 37.5, to provide collateral relief so as "to eliminate the need for multiple federal habeas corpus proceedings in death cases." Again, while there is no constitutional right to a postconviction proceeding, when the State undertakes the role of providing such, as it has done here, it must comport with due process and be fundamentally fair.

Therefore, pursuant to *Porter*, we hold that fundamental fairness dictates that the appellant in this case be afforded an opportunity to have his claims considered.

*Id*. at 619, 37 S.W.3d at 599 (citations omitted).

We are mindful of the State's reliance on this court's decision in *Roberts v. State*, 2011

Ark. 502, 385 S.W.3d 792 (*Roberts III*), a capital case, wherein we dismissed a Rule 37

petition for lack of jurisdiction. But our conclusion in *Roberts III* was not based on a holding

that the time requirements of Rule 37.5 operated as a jurisdictional bar to the filing of the

petition. In *Roberts III*, the petitioner filed a belated Rule 37 petition after having initially

waived his rights under Rule 37.5. After the petitioner waived those rights, the State filed

a motion with this court requesting the court to review the record of the petitioner's waiver

hearing. This court granted the motion and affirmed the circuit court's findings regarding the petitioner's waiver of postconviction relief. *State v. Roberts*, 354 Ark. 399, 123 S.W.3d 881 (2003) (per curiam) (*Roberts II*). No further proceedings occurred in state court until several years later when the petitioner filed a Rule 37 petition in circuit court, which was denied. We dismissed the subsequent appeal because neither the circuit court nor this court was ever vested with jurisdiction to hear the petition. *Roberts III*, 2011 Ark. 502, 385 S.W.3d 792. In determining that we lacked jurisdiction, we noted that the petitioner never moved this court to rescind his waiver, which we had affirmed. *Id.* Thus, this court concluded that, once the record was lodged with this court in *Roberts II*, the circuit court lost jurisdiction to make any subsequent rulings in a proceeding under Rule 37.5. Explaining further, this court stated as follows:

> We therefore hold that where the ninety-day filing period under Rule 37.5(e) has expired and a waiver of postconviction relief has been affirmed by this court, a petitioner must file the appropriate motion to reopen postconviction proceedings before a Rule 37 petition can be brought in circuit court. Because this has not been done in the present case, the circuit court was without jurisdiction to entertain Roberts's Rule 37.5 petition, and this court is likewise without jurisdiction to hear an appeal from any decision of the circuit court in the matter. We, therefore, dismiss this appeal.

*Roberts III*, 2011 Ark. 502, at 9, 385 S.W.3d at 796–97 (citation omitted).

In reaching its conclusion, the *Roberts III* court also considered the State's argument that the petitioner's initial waiver of Rule 37 relief was analogous to the filing of a first petition and, thus, the belated petition he filed was an improper successive petition. In considering this argument, the court cited to its decision in *Kemp v. State*, 2009 Ark. 631, where the court held that a petitioner must ask this court to recall its mandate issued after the

first Rule 37 appeal before a second Rule 37 petition can be brought in circuit court. In

*Kemp*, this court noted that it had consistently upheld the rule that a petitioner is limited to

one petition for postconviction relief unless the first petition was specifically denied without

prejudice to allow the filing of a second petition. *Id.* The court in *Roberts III* relied in part

on language from *Kemp* to conclude that the petitioner's waiver of postconviction relief was

equivalent to the filing of a first petition for postconviction relief. *Roberts III*, 2011 Ark. 502,

385 S.W.3d 792.

We believe that the instant case is more akin to the situations at issue in *Porter* and

*Jackson* than those presented in *Roberts III* and *Kemp*. While there is no question about when

or if counsel was appointed to represent Engram, there are certainly questions raised about

counsel's actions following her appointment. Specifically, Engram contends that Fowler

missed the deadline for filing his Rule 37 petition and then tried to protect herself by stating

on the record that she had not identified any issues that were appropriate for Rule 37 relief.

The record before us demonstrates that, following the issuance of our mandate from

Engram's direct appeal, the circuit court held the required hearing and appointed Fowler to

represent Engram in pursuit of a Rule 37 petition. Prior to the deadline for filing the

petition, a status hearing was held, and Fowler announced that she was still reviewing the

Engram record. The trial court then scheduled the next hearing on the matter for June 25,

2001, and at the hearing the following colloquy occurred:

> MS. FOWLER: Your Honor, we were here for report today on the status of Mr.
> Engram's potential Rule 37. I have reviewed all of the State's records, the public
> defender's records, the appeal records, the trial transcript. I've discussed all of the

potential issues with Mr. Engram and we did not identify any issues that were appropriate for Rule 37.5 relief.

I have discussed with him that the next step is federal habeas and he has authorized me to pursue appointment on that issue in federal court and that's where we're going from here. But there was nothing we felt merited filing a petition in this court for Rule 37 relief.

THE COURT: Mr. Engram, is that your understanding of the status of the matter at this point?

THE DEFENDANT: Yes, sir.

THE COURT: You agree with Ms. Fowler's assessment?

THE DEFENDANT: Yes, sir.

THE COURT: You satisfied that she has reviewed each and every item that pertains to your case?

THE DEFENDANT: Yes, sir

. . . .

THE COURT: So you are now going to proceed in federal court with whatever remedies might be available there; is that correct?

MS. FOWLER: That's correct. We have identified some potential issues there and we plan to go forward with that.

THE COURT: And those issues would not be applicable in circuit court?

MS. FOWLER: No. They are matters of law, not trial tactic or ineffective assistance of counsel.

THE COURT: And you agree with that, Mr. Engram?

THE DEFENDANT: Yes, sir.

THE COURT: All right, then.

According to Engram, Fowler's statement on the record that she chose not to file a Rule 37 petition on Engram's behalf because there were no issues to pursue in a Rule 37 petition was false.

Although Engram, in *Engram II*, raised a conclusory allegation regarding Fowler's postconviction representation, he has now submitted specific allegations, with a declaration by attorney Jeffrey Rosenzweig in support of some of those allegations. Rosenzweig asserts that attorney Craig Lambert, who at the time was romantically involved with Fowler, contacted him and asked him to notify the court that Fowler mistakenly allowed the deadline for the Rule 37 filing to pass. Rosenzweig further avers that he notified the circuit court that Fowler had negligently allowed the deadline to pass but was later in the courtroom, on an unrelated matter, when he heard Fowler announce that she was not pursuing Rule 37 relief on Engram's behalf but, instead, would proceed in federal court.

This information that was presented to the circuit court in a memorandum attached to Engram's Rule 37 petition is enough to give rise to a question of whether there is good cause for Engram's failure to timely file a Rule 37 petition, and it was error for the circuit court to summarily dismiss Engram's Rule 37 petition without holding a hearing to consider the issue of good cause. Because a question exists as to whether there was good cause for Engram's failure to timely file a Rule 37 petition, we cannot accept the State's contention that the petition filed by Engram is an impermissible second or successive petition as discussed in *Roberts III* and *Kemp*.

12

We also do not agree with the State's alternative argument that Engram is precluded from seeking the instant relief because the issues raised in his Rule 37 petition have already been raised to, and rejected by, this court in *Engram II*, including Engram's allegations regarding the ineffectiveness of his postconviction counsel. In looking at our general law with regard to the law-of-the-case doctrine, this court in *State v. Harrison*, 2012 Ark. 198, 404 S.W.3d 830, explained as follows:

> Under the doctrine known as law of the case, the "decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review." The doctrine prevents an issue raised in a prior appeal from being raised in a subsequent appeal "unless the evidence materially varies between the two appeals." However, the doctrine is not limited to issues raised in prior appeals as the doctrine was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. Accordingly, the conclusion of the court in one opinion becomes the law of the case on subsequent proceedings on the same cause and the matter is res judicata. However, in order for the law-of-the-case doctrine to bar consideration of an issue, the merits of the claim must previously have been addressed and the claim must have been adjudicated.

*Id*. at 5–6, 404 S.W.3d at 834 (citations omitted).

Notably, our cases have repeatedly held that law of the case, like res judicata, is an affirmative defense to be raised at the trial court level and presents no question of jurisdiction. *State v. Bell*, 329 Ark. 422, 948 S.W.2d 557 (1997); *see also Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 47 S.W.3d 227 (2001). Law of the case cannot be raised for the first time on appeal, and the appropriate time to raise this issue is before the circuit court at the first possible time. *See Bell*, 329 Ark. 422, 948 S.W.2d 557. Here, the State never filed a motion to dismiss Engram's Rule 37 petition in circuit court. In fact, the State never filed any type of response to the petition or accompanying motion and memorandum; thus,

13

Engram is correct in asserting that the State is improperly raising this issue for the first time on appeal.

Even if the State had timely raised its law-of-the-case argument, it would still fail. At the time that we decided *Engram II*, we were not presented with the serious allegations regarding Engram's appointed counsel. Although there was a general contention that she had failed to timely file the Rule 37 petition, it was nothing more than a mere conclusory allegation, and there was certainly nothing submitted in support of it. Moreover, we cannot ignore the fact that in *Engram II* the court relied, in part, on the fact that Engram had waived his right to file a Rule 37 petition as part of its basis for holding that he could no longer avail himself of such relief; but, in so doing, this court failed to acknowledge that the State never moved this court to review Engram's waiver, nor did this court ever consider whether such a waiver was valid.

The State asserts that Engram's choice to forgo postconviction relief was not an actual "waiver" because Engram did not forgo the appointment of postconviction counsel but, in so arguing, the State fails to recognize that while Engram requested the appointment of Rule 37 counsel, he ultimately gave up his right to pursue postconviction remedies. This court most recently discussed the issue of waiver in the postconviction process in *Roberts v. State*, 2013 Ark. 57, ___ S.W.3d ___ (*Roberts IV*), where the issue was whether the petitioner's waiver of postconviction relief, and our subsequent affirmance of that waiver, constituted a defect in the appellate process. In analyzing the issue, this court noted as follows:

> In our state, a defendant sentenced to death will be able to forgo a state appeal only if he has been judicially determined to have the capacity to understand the choice

between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence. This same standard governs the waiver of rights to postconviction remedies following the affirmance of a death sentence. Furthermore, we have held that it is error to allow a waiver of postconviction relief without a competency examination to determine whether the defendant had the capacity to choose between life and death and to knowingly and intelligently waive all rights to postconviction review of the death sentence.

*Id.* at 8–9, ___ S.W.3d at ___ (citations omitted). The *Roberts IV* court noted that the petitioner's mental evaluations had occurred several years prior to the time that he waived his postconviction rights and did not properly examine the issue of whether he knowingly and intelligently waived all rights to postconviction review, including his capacity to choose between life and death. Thus, this court concluded that its failure to identify the lack of such an evaluation when it reviewed the record of his waiver–of–postconviction–rights hearing constituted a breakdown in the appellate process that warranted reopening his postconviction proceedings. *Id.*

The instant case is different in that Engram did not waive his rights to postconviction relief from the outset, as did the petitioner in Roberts. But Engram ultimately waived his right to file a petition under Rule 37.5, on the advice of counsel, and what remains to be seen is whether counsel's advice was the result of her failure to timely file the petition. Thus, under these facts, we cannot say that this court's holding in *Engram II,* that it was too late for Engram to file a Rule 37 petition, is law of the case and now precludes him from seeking such relief. To hold otherwise would ignore the well-settled principle that while there is no constitutional right to a postconviction proceeding, when a state undertakes to provide collateral relief, due process requires that the proceeding be fundamentally fair. *See id.* Under

the facts and circumstances of this case, and considering the finality of the punishment at issue, we hold that the circuit court erred in summarily dismissing Engram's Rule 37 petition in the absence of a hearing and specific written findings on the issue of whether there exists good cause for the belated filing of the petition.

Reversed and remanded.

*Jenniffer Horan*, Public Defender, by: *Julie Pitt*, Ass't Federal Public Defender; and *Montgomery, Adams & Wyatt, PLC*, by: *Dale Adams*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rachel H. Kemp*, Ass't Att'y Gen., for appellee.