

# SUPREME COURT OF ARKANSAS

No. CR–10–545

| | |
|---|---|
| MICKEY DAVID THOMAS<br>APPELLANT | **Opinion Delivered** March 20, 2014 |
| V. | APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. CR–2004-5-2] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE TED C. CAPEHEART, JUDGE |
| | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On September 28, 2005, a Pike County jury convicted appellant, Mickey David Thomas, of two counts of capital murder and sentenced him to death. We affirmed his conviction and sentence in *Thomas v. State*, 370 Ark. 70, 257 S.W.3d 92 (2007).

On April 16, 2009, Thomas filed his initial, unverified Rule 37.5 petition in the Sevier County Circuit Court and a motion to amend his petition. On November 6, 2009, Thomas filed an amended Rule 37.5 petition, and on that same day the circuit court conducted a hearing on Thomas's petition. On February 1, 2010, the circuit court denied Thomas's petition. Thomas asserts proper jurisdiction and now brings this appeal. He presents two issues for review: (1) the circuit court erred when it denied Thomas's claim that he had received ineffective assistance of counsel when his counsel did not object to a change of venue to Pike County, Arkansas, and (2) the circuit court erred when it denied Thomas's claim that he had received ineffective assistance of counsel when his counsel failed to secure

SLIP OPINION

and present the testimony of Lieutenant Alex Mathis.

*Jurisdiction*

Prior to reaching the merits of Thomas's appeal, we must first address jurisdiction because jurisdiction is a threshold issue, as well as the basis of the order being appealed. *Gilliland v. State*, 2011 Ark. 480 (per curiam).

Thomas contends that the circuit court maintained jurisdiction and his appeal is ripe for review. The State responds that the we do not have jurisdiction to hear this case because the circuit court did not have jurisdiction to hear Thomas's Rule 37.5 petition. The State contends that the circuit court lacked the authority to grant extensions of time for the filing of Thomas's petition. The State further asserts that the circuit court was without jurisdiction to entertain Thomas's belated and improperly filed Rule 37.5 petition, and therefore, we are without jurisdiction.

Rule 37.5(e) addresses the timeliness of the filing of petitions for relief pursuant to Rule 37.5. Subsection (e) of the Ark. R. Crim. P. 37.5 (2013), entitled "Time for Filing Post-Conviction Petition" provides: "A petition for relief under this rule shall be filed in the circuit court that imposed the sentence of death within ninety (90) days after the entry of the order required in subsection (b)(2) of this rule." In reviewing the time limitations contained in Rule 37.5 cases, in *Engram v. State*, 2013 Ark. 424, at 6, we explained:

> [T]his court has never held that the ninety-day time limitation of Rule 37.5(e) is an absolute jurisdictional bar.
>
> . . .
>
> This court in *Jackson* [*v. State*, 343 Ark. 613, 37 S.W.3d 595 (2001)] refused to hold

2

that the time limits of Rule 37.5(e) create an absolute procedural bar to the belated filing of a postconviction petition in a capital case. The court in *Jackson* further explained as follows:

> *Porter*, [*v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999)], and the cases that follow suggest that Rule 37.5 requires a heightened standard of review of capital cases because the State has undertaken, via Act 925 of 1997 and Rule 37.5, to provide collateral relief so as "to eliminate the need for multiple federal habeas corpus proceedings in death cases." Again, while there is no constitutional right to a postconviction proceeding, when the State undertakes the role of providing such, as it has done here, it must comport with due process and be fundamentally fair.

Here, the record demonstrates that, based on Thomas's counsel's December 26, 2007 appointment, his Rule 37.5 petition was due on March 25, 2008. Thomas's counsel filed six motions for extensions of time to file the Rule 37.5 petition, and the circuit court granted each motion, with the petition ultimately due on April 16, 2009. On April 16, 2009, Thomas filed his initial, unverified petition for relief pursuant to Rule 37.5 and also filed a motion to amend his petition. On November 6, 2009, Thomas filed his amended petition, and on that same day, the circuit court conducted a hearing on Thomas's amended petition.

The issue before us regarding the timely filing of Thomas's Rule 37.5 petition is one of fundamental fairness. When we apply the analysis from *Engram*, the question becomes whether it is fundamentally fair to require an inmate under a death sentence to abide by the stringent filing deadlines when his counsel timely filed his initial petition, the circuit court granted extensions of time, and Thomas complied with the circuit court's deadlines. The record before us indicates that the approximate eighteen-month extension of time was granted for several reasons: counsel's heavy workload; co-counsel's withdrawal from Thomas's case because co-counsel moved out of state; appointment of new counsel; new counsel's obtaining

SLIP OPINION

certification; the circuit judge's recusal in this case; and another circuit judge's recusal because he was the prosecutor in the original trial. We note that none of these delays were within Thomas's control. Further, the delays were not in Thomas's counsel's control. Here, to prohibit Thomas from proceeding on his postconviction petition would be to ignore the well-settled principle that, while there is no constitutional right to a post-conviction proceeding, when a state undertakes to provide collateral relief, due process requires that the proceeding be fundamentally fair. *See Engram.* Under the facts and circumstances of this case, and considering the finality of the punishment at issue, we hold that the circuit court maintained jurisdiction to consider Thomas's petition, and thus, vests jurisdiction with this court to reach the merits of Thomas's Rule 37.5 appeal.[1]

*Venue*

For his first point on appeal, Thomas asserts that the circuit court erred when it denied his claim that he received ineffective assistance of counsel because his counsel did not object to a change of venue to Pike County, Arkansas. The State responds that the argument is without merit and also not cognizable in postconviction proceedings.

On July 21, 2005, the circuit court conducted a pretrial hearing on Thomas's motion to change venue based on pretrial publicity. In that motion, Thomas submitted voluminous

---

[1]The State also contends that the circuit court was without jurisdiction because of alleged procedural violations by Thomas: (1) Thomas's co-counsel's failure to properly withdraw, (2) Thomas's failure to have new co-counsel properly appointed with an order, and (3) Thomas's failure to obtain a ruling on his motion to amend his petition. However, despite the merits of these allegations, the argument fails because these matters are not jurisdictional and would not prevent the circuit court from ruling on Thomas's petition.


information regarding pretrial publicity for the four counties in the district, including Pike County. The pretrial publicity data demonstrated that Pike and Howard Counties had received the least amount of publicity in the four-county district. Thomas also submitted as exhibits "Data Tables for Population Percent by Race and County from the 2000 Census." The circuit court granted Thomas's motion and moved the trial to Pike County.

On appeal, Thomas alleges that once the circuit court granted his motion and moved his trial to Pike County, his counsel was ineffective for failing to properly object to the transfer to Pike County because Pike County had a very small African American population, and Thomas is African American. Stated differently, according to Thomas, although Pike County was within the judicial district and did receive the least amount of pretrial publicity, which was the basis for the change of venue, his counsel was ineffective for not taking the next step and objecting to the circuit court's choice of county. Thomas further asserts that his counsel should have objected and included claims of systematic exclusion of specific racial groups.

The State responds that Thomas has failed to meet the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing that trial counsel's conduct was so egregious that he was not acting as the counsel guaranteed by the Sixth Amendment, and that Thomas suffered prejudice from the conduct that rendered the outcome of the trial unreliable. Additionally, the State responds that Thomas's venue claim is not cognizable in a postconviction matter because his claim is one of trial strategy.

Turning to our review, "on appeal from a circuit court's ruling on a petitioner's

request for Rule 37 relief, this court will not reverse the circuit court's decision granting or denying post-conviction relief unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Mason v. State*, 2013 Ark. 492, at 1–2 (internal citations omitted).

Claims of ineffective assistance of counsel are reviewed under the standard of review set forth in *Strickland*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

*Burton v. State*, 367 Ark. 109, 111, 238 S.W.3d 111, 113 (2006) (quoting *Strickland*, 466 U.S. at 687).

Thus, Thomas must first show that counsel's performance fell below an objective standard of reasonableness and then that counsel's errors actually had an adverse effect on the defense. *Id*. Thomas must satisfy both prongs of the test, and it is not necessary to determine whether counsel was deficient if Thomas fails to demonstrate prejudice as to an alleged error. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam).

Further, with respect to an ineffective-assistance-of-counsel claim regarding venue, to establish that the failure to seek a change in venue amounted to ineffective assistance of counsel, a petitioner must offer some basis on which to conclude that an impartial jury was

SLIP OPINION

not empaneled. *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990).

At issue is the circuit court's denial of Thomas's venue claim. In its February 11, 2010 order, the circuit court stated:

> The court finds there was no error in change on venue to Pike County. The court finds from the record of the venue hearing, the difference in African American population of Pike County and Sevier County to be less than 1%. Further, [Thomas] introduces no evidence that any class of people were systematically excluded from the Pike County Jury pool. . . .

> The court in reviewing the venue hearing finds that the case was properly transferred to Pike County due to that county receiving the least trial publicity of the other three counties in the judicial district. Thus, the court finds that [Thomas] was not prejudiced.

Here, Thomas has failed to allege, let alone prove, that he was prejudiced, or that the jury that heard his case was biased and not impartial. Thomas has offered nothing other than conclusory allegations that counsel was deficient for failing to seek a change of venue and has not alleged that he was prejudiced. Thomas alleges that *had* his counsel objected to the transfer to Pike County, he would have had an opportunity to raise *Batson*, Fourteenth Amendment, and Sixth Amendment challenges and the systematic exclusion of certain jurors. However, Thomas simply makes conclusory statements.[2]

Additionally, the decision whether to seek a change of venue is largely a matter of trial strategy and therefore not an issue for debate under our postconviction rule. *Neff v. State*, 287 Ark. 88, 696 S.W.2d 736 (1985). At Thomas's Rule 37.5 hearing, Thomas's counsel testified

---

[2]Thomas conceded at oral argument that he has not presented any evidence of a systematic exclusion of certain jurors.

7



that his actions at the venue hearing were matters of trial strategy. Thomas alleges that the failure to object was not trial strategy yet offers no alternative to the counsel's position that it was trial strategy; he simply states that it was not trial strategy.

Based on the discussion above, we do not find that the circuit court erred. Thomas did not provide any support for his conclusory claims that counsel was ineffective. Likewise, there has been no showing that counsel committed any specific error that prejudiced the defense because Thomas did not specify, with facts, that he was prejudiced. In reviewing the record before us and Thomas's argument, we are unpersuaded that Thomas has met his burden. We affirm on this point.

*Lieutenant Alex Mathis*

For his second point on appeal, Thomas contends that the circuit court erred when it denied Thomas's claim that he had received ineffective assistance of counsel when his counsel failed to secure and present the testimony of Lieutenant Alex Mathis. The State responds that we should affirm the circuit court, alleging that Thomas's argument is without merit. The State also asserts that trial strategy is not a cognizable claim in postconviction proceedings.

On July 1, 2004, the circuit court conducted a pretrial hearing. At the hearing, one of the investigating officers of the murders, Lieutenant Alex Mathis, with the DeQueen, Arkansas Police Department, testified regarding his investigation. Mathis testified that there was no allegation "of sexual penetration, any sexual assault or rape or anything of that nature."

At trial, Joshua Warren testified for the State. Warren was an arresting officer with the Idabel, Oklahoma Police Department, and he testified that upon arrest, when he patted

Thomas down, he removed the contents of Thomas's pocket. Warren testified that the contents of Thomas's pocket consisted of money, an unused condom, two spent .38-caliber rounds and a set of keys. Over Thomas's counsel's objection, the condom was introduced into evidence.

On appeal, Thomas alleges that his counsel was ineffective for not calling Mathis to rebut Warren's testimony and the circuit court erred in denying his claim.

In reviewing an assertion of ineffective assistance of counsel concerning the failure to call a certain witness, this court's objective is to determine whether the failure resulted in actual prejudice that denied the petitioner a fair trial. *Moten v. State*, 2013 Ark. 503 (per curiam). The decision whether to call or not to call a particular witness is largely a matter of professional judgment. The fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Accordingly, in order to demonstrate prejudice, Thomas must establish that there was a reasonable probability that, had counsel presented the witness, the outcome of the trial would have been different.

With these standards in mind, we turn to the circuit court's February 1, 2010 order and its denial of Thomas's claim on this point:

> [Thomas's counsel] testified at this hearing that although a condom was found on [Thomas] at his arrest was introduced, the State never argued that [Thomas's] intent was rape. He testified he did not want to draw attention to that fact. Thus the decision to use the officer's testimony was one of trial strategy. Further, the court finds that to be a good tactical decision. The officer's testimony about the crime scene would in no way negate the evidence found on [Thomas] and would only bring to the jury's attention what the prosecutor never mentioned. Finally, [Thomas] failed to prove how introducing said testimony would change the outcome of the trial.

9

The record demonstrates that at Thomas's Rule 37.5 hearing, Thomas's counsel testified that he made a strategic decision not to call Mathis because he did not want to draw additional attention to the evidence:

> Our concern was that the State would allege that the homicides occurred because [Thomas] was going to rape one or more of the victims. And if you notice, [the prosecutor] stayed away from that in his closing argument so he wouldn't have that argument, but our -- my purpose basically was to make sure that there was no allegation that there was any evidence consistent of a rape. It was bad enough that there was already string or twine found and a condom found. We don't need any – you know the prosecutor did not open the door and say what do you think, ladies and gentleman, Mr. Thomas's intent was?

Here, Thomas asserts his counsel should have called Mathis to testify despite the prosecution's theory, to rebut any insinuation or implication regarding sex crimes. However, Thomas did not offer facts from which it could be said that counsel's decision not to call Mathis or introduce his prior testimony was anything more than trial strategy. Additionally, Thomas has failed to demonstrate that he was prejudiced by his counsel's decision not to call Mathis to testify.

Our review of the record demonstrates that no error was committed and we affirm the circuit court on Thomas's claim regarding Lieutenant Mathis.

Based on the discussion above and our standard of review, we find no error and affirm.

Affirmed.

*Harrelson Law Firm, P.A.*, by: *Jeff Harrelson*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.